Our final argument today is Kaplovic against Saul. Mr. Parikh. Good morning members of the panel. Anthony Parikh on behalf of the appellant Mr. Kaplarevic. May it please the court. At the beginning of this presentation I want to focus the court's attention on the period of question which is the subject matter of this appeal. The onset date alleged was August 1, 2012 by Mr. Kaplarevic. The date last insured by Mr. Kaplarevic based on his work history and the time employed was December 31, 2014. So that is the critical period that we're going to be arguing where the judge in this considering the appearance and the performance of Mr. Kaplarevic on the date of the second administrative hearing after remand which was on it which was in 2018 December pardon January 26, 2018. So by looking at the physical appearance and assessing as Judge Studzinski did the physical performance of Mr. Kaplarevic during the second hearing on January 26, 2018 he went outside of the scope of the period during which the disability was to be determined. And that was. Let me ask you this I mean first of all it seems like a pretty routine thing for administrative law judges to do. They can see the person if the person says I can't walk you know across the room and yet they are walking across the they're better off. Now if he's better I don't know if you're suggesting that he was disabled as of January 31, 2014 and now he's better and so any benefits he might have should be terminated or what you're saying. But in and of itself for the administrative law judge to say that he's able to sit through the hearing for 30 minutes that he was able to walk out of the room he was able to pull and so forth as a common-sense cumulative bit of evidence I don't see where in the law that's defined as inappropriate. Where it's inappropriate judge is that after the date last insured DLI date as it's refers to 12 31 2014 when Mr. Kaplarevic lost his insured status. No I understand all about that and usually what we see is somebody coming along with evidence after the date last insured that shows that they're worse off than they were before the date last insured and they ask that there be sort of an extrapolation backwards to say the person must also have been disabled then. In this instance though I guess you're saying he's better off than he was on the date last insured. No judge I'm not saying that in this particular case Mr. Kaplarevic suffered from two main chronic conditions three arguably if you consider diabetes mellitus type two. The first one is musculoskeletal problems that he had throughout his back and sciatica nerve that radiated pain down to his buttocks and legs but back problems were his main issue. The second set of chronic conditions had to do with the issues involving his heart. He had a heart operation in 2011 and he had a heart operation just before the second hearing in 2018. In fact we supplemented those records just to show that these are chronic conditions that are not going to be resolved throughout the lifetime of Mr. Kaplarevic. They're only going to get worse as he gets older. So that was the reason but in terms of the scope of inquiry with respect to his disability or not both vocational experts and both administrative judges that heard this case below determined that Mr. Kaplarevic was indeed disabled from doing any work that he did in the past. Any of his previous work as a mechanic, truck operator, etc. It moves to step five where the burden is on the commissioner. Right. The burden is on the commission to prove that Mr. Kaplarevic could do other work during the period in question which is from the date of onset August 1, 2012 through the date last insured when he lost his insured status December 31, 2014. That's the inquiry that needs to be focused on by all administrative law judges. And what happened here with Judge Studzinski is that he went beyond that date last insured period, ignored the testimony of Mr. Kaplarevic as to his residual functional capacity and all the problems that he had which were exacerbated over time. Let me ask a variant of Judge Wood's question. Sure. Are you seeking a closed period of disability that runs only through his date last insured or are you seeking an open-ended period of disability? The latter, Judge. But then whether he is disabled now matters. The date last insured matters. He has to be disabled by then. Correct. But he also has to be disabled now in order to get an open-ended string of benefits. Right. So if you are seeking an open-ended string of benefits, whether he was disabled on the day of the hearing is relevant. It is relevant but the determination is for eligibility purposes is was he disabled before he lost his insured status. That really is the critical period of time. But he has to stay disabled. Correct. But there were no other examinations. There were five treated physicians. You're complaining, counsel, about the observation the ALJ made about his ability to sit during the hearing despite testifying that he couldn't do what he was obviously doing. And you're telling us that the administrative law judge could not take that into account because it was past the date last insured. And that would be true only if the date last insured were the last date on which he was seeking benefits. But it isn't. If Mr. Kuplarowicz became disabled as the previous, in fact, both administrative law judges found after the date of last insured, he would not be entitled to benefits under any circumstances. He would have to be found disabled before December 31, 2014 in order for his disability to continue in order to claim ongoing benefits. So if I may proceed. Mr. Paretka, I'll move to a different approach. In the ALJ's opinion, for example, this is A42, seems to be page 7, like three or four different numbering systems here, but page 7 of 11 of the ALJ's opinion, he refers to the March 2013 consultative medical examination before the date last insured after the onset date. And he talks about the weak vision. He talks about the bicep tear, continuing pain. But then he says the undersigned, however, noted this weakness would not be problematic within light work residual functional capacity. And then he makes some other comments about his medical situation at the time. All of which eventually feeds into the residual functional capacity determination that's laid out at the bottom of page 5 and top of page 6, looking at this thing. And what is the question, Judge? Well, the point is the administrative law judge has addressed his physical capabilities during the period from onset to last insured. And has also made some comments about afterwards. Our review is for substantial evidence. So why should we, on what ground is there something so troubling about this that we should say it doesn't count as substantial evidence? Because both vocational experts, which were brought in by the government to testify as to both ability to do past work, which both of them ruled out, as well as prospectively as to any other work, indicated that Mr. Kaplarovic would be more than 30% off task because of his myriad of conditions that he was suffering from and would be unable to be employed in any other position because of those problems. Off task means that, excluding lunches and breaks, he would not be able to perform eight hours a day, as will be required, five days a week, week after week. Because of the chronic conditions that he had with respect to his back, with respect to his heart, the surgery on his right dominant hand, the vision problems, diabetes issues, the chronic pain problems that brought on depression and anxiety, the side effects of medication, he was prescribed hydrocodone for pain. All of those have to be taken into consideration in totality. And what happened here is that the ALJ, the Administrative Law Judge, erred by giving too little weight to his medical records, which showed that he had a degenerative disc disease and back pain with related functional limitations, and focused on the claimant's appearance on the day of and whether he could stand and open the door and go to the bathroom to relieve himself. This judge, Studinsky, who was the second Administrative Law Judge, saw the claimant a total of about 45 minutes, 35 minutes in a sitting position, roughly, and 10 minutes as he left the room, went to the bathroom and returned. And based on that observation, he drew all the conclusions that he drew as to the credibility of the claimant and ignored five treating doctor's records, three independent medical examiner records. Mr. Proctor, your time has expired. Thank you. Thank you. Mr. Latrofa. Good morning, Your Honors. My name is Donato Latrofa. I'm appearing on behalf of Defendant FLE, Andrew Saul, Commissioner of Social Security. The ALJ's decision in this case rests on three sturdy pillars. Mr. Kaplarevich's undeveloped claims fail to erode or find weakness in those pillars supporting the ALJ's decision. As we discussed in our brief, and we'll discuss here, substantial evidence supports the Commissioner's determination that Mr. Kaplarevich failed to prove his disability. In the first instance, we note that the objective evidence, in particular the examination notes that exist in this case, and in particular the record, the examination notes focused on the time roughly within that outlined by Mr. Frajka, show that Mr. Kaplarevich had predominantly normal evaluations by his treating physicians. Dr. Jovanovich treated Mr. Kaplarevich five times in the block of time outlined by Mr. Frajka as the most relevant time, and in those five treatments, there were no significant limitations identified or opined anywhere in the records. In fact, Dr. Jovanovich recommended Mr. Kaplarevich to undergo physical therapy. Other physicians as well at the same time period outlined that Mr. Kaplarevich presented with no acute distress. This is a relevant piece of evidence, a relevant brick supporting the ALJ's determination because the no acute distress observation, a clinical observation by medical professionals, is relevant evidence. The diagnostic imaging, what little there is in this case, showed nothing of any sort of significant limitations in terms of Mr. Kaplarevich's back. In essence, Mr. Kaplarevich is asking this court to put his diagnoses on the same playing field as the evidence of the treating physicians that actually treated him. And while diagnoses certainly are relevant in terms of the subjective symptom analysis, they can't be the primary evidence proving disability. That's the first pillar. What's wrong with a diagnosis? I was a little... Oh, dear. Sorry about that. Turned up a little too much. So a diagnosis is something the doctor writes down after seeing the person and after deciding what they need. And you're really asking doctors to drive down a very thin, narrow road because you complain if they intrude upon the administrative law judge's responsibility to decide whether a series of problems amounts to, quote, a disability for purposes of the act. On the other hand, if they don't say enough, it's just a diagnosis, what are they supposed to say? I think it's not asking too much of the doctors to outline what they find as a diagnosis based on their recommendations and their experience and knowledge of the medical field, but then to also kind of further flesh it out based on their examination records. If, for example, Mr. Kaporevich came in and he was walking using a cane and he really needed that cane, the doctor can suss out to what effect that cane is necessary. My concern is that the doctor... The agency might be asking doctors to write a bunch of things in their notes that the doctor has no particular personal reason to write in their notes. Doctors don't write down, can lift 20 pounds frequently and can crawl and climb up ladders and all these things that the commissioner is interested in. If you ask the doctor to perform a test like that or if one of the consulting examiners at the agency sometimes uses, then fine. The doctor is told this is what we're interested in. But if somebody just comes and presents with back pain, the doctor is just going to try to figure out what can I do about the back pain. Maybe I'll give you some medication. Well, I think that's true, Your Honor, but the doctor also in the records and the court knows this from looking at these cases, the doctors will suss out and will develop that the person has an antalgic gait or has an abnormal gait or can't get on the stool or can't get through the door. So the doctors will add detail when that detail presents itself. When they have some medical reason to add that detail, but the question whether something's medically wrong with someone overlaps with but is not quite the same as whether the limitations that the person has are the types of things that would prevent them from working, which is the question that the agency is concerned with. So the doctor, there may be a mismatch between the kinds of things the doctor for his or her own purposes is going to write and the kinds of things that the agency needs in the end to make its assessment. Well, Your Honor, we understand that, but the important thing is that the administrative law judge in reviewing the record as a whole will have multiple doctors taking a look at a particular record and developing that record with their own observations. So we understand from the court's perspective, if there is a one-off where there was one doctor who saw Mr. Kaplarevich one time saying, well, you know, he didn't look like his back was hurting that day, maybe he had a good day, but that's not the case in this case, Your Honor. In this case, we have physicians over the course of a year and a half, all of whom noting that Mr. Kaplarevich at worst presenting with some range of motion limitations that the ALJ obviously took into consideration in crafting a very well-documented residual functional capacity, turning, you know, if the court wants to look at record 873, 874, the ALJ's residual functional capacity for the relevant rendered by Judge Studzinski, the court will see that there are specific limitations concerning the range of motion that Mr. Kaplarevich can engage in, and this is obviously a much finer, more handcrafted residual functional capacity than the court typically sees. And it's the agency's position that this reflects the ALJ's studied reasoning and review of the record and giving Mr. Kaplarevich honestly the benefit of the doubt in terms of the record that he presented and giving something more restrictive than any other physician opined anywhere else in the record. Okay. And in line with that, it's important to note that Mr. Kaplarevich presented no treating physician opinions anywhere in the record during the course of this. He appears to point out a Dr. Shaw opinion in March of 2013 as a potential treating opinion, but obviously that can't be the case because Dr. Shaw only reviewed an X-ray once on behalf of the agency asking him to review an X-ray. And even Dr. Jovanovich, who could have been a treating physician opinion source, didn't give any sort of opinion that discussed the nature and severity of Mr. Kaplarevich's impairments. So the ALJ is left with looking at the only competent physician opinions present in this case are from the agency consultants who themselves rendered residual functional capacity recommendations less restrictive than what the ALJ ended up crafting in making his determination. And as this court knows, it's illuminating and persuasive when an ALJ's residual functional capacity is more restrictive than anything else found in the record. And that's what's in this case. Mr. Kaplarevich points out nowhere where the ALJ went beyond what any physician opined. And in fact, the only place where Mr. Kaplarevich could have made an argument would be concerning the ALJ's determination that there were no limitations in Mr. Kaplarevich's ability to sit, stand, or walk. However, the ALJ in the very next sentence discusses the need to be able to shift and alternate positions and postures and things of that nature. Again, more restrictive than anything that Dr. Mandala or Gottweil had recommended. And then we get to obviously the ranges of motion. Additionally, with the small amount of time I have left, Mr. Kaplarevich appears to challenge the administrative law judge's subjective symptom analysis. The observations at the hearing, as the court noted, are relevant, but they're not the primary driver in the ALJ's determination in this case. The ALJ noted in the decision that Mr. Kaplarevich's presentations and statements in the record conflicted with the objective evidence that we already discussed and also appear to conflict with the conservative treatment regimen that Mr. Kaplarevich underwent. He underwent no surgery. He had quarterly physician visits and some physical therapy. And admittedly, he had to use some pain medication. Finally, if the court would indulge me. Thank you, Mr. Latrofa. Thank you, Your Honor. The case is taken under advisement. Judge, I had three minutes to respond, if I may. Your time has expired, counsel. The case is taken under advisement and the court will be in recess.